Good morning, your honors. May it please the court, my name is Steve Art and I represent Luis Vargas. Mr. Vargas was wrongly convicted of three sexual assaults that occurred in Los Angeles in 1998. He spent nearly 16 years in prison before being exonerated by DNA evidence in 2015. The DNA showed that a victim identification was wrong. Vargas' convictions were vacated and he was adjudicated factually innocent by the California courts. Mr. Vargas brought this Section 1983 case alleging that the LAPD and its officers caused his wrongful conviction and violated his right to due process, pursuing two established constitutional theories. First, that the defendants obtained false identifications from the three victims using unduly suggestive identification procedures. And second, that the defendants suppressed exculpatory evidence in violation of Brady v. Maryland. Namely, that the three crimes of which Vargas was wrongly convicted were actually investigated as part of a large pattern of sexual assaults committed by the teardrop rapist. Five significant errors at different stages of the case in the district court require reversal. First, Mr. Vargas' identification claims were dismissed on the pleadings when the district court incorrectly decided that they were precluded by prior criminal proceedings. Even though Mr. Vargas' criminal conviction had been vacated, that conclusion contradicts Supreme Court precedent and this court's precedence. Because Vargas' conviction was vacated in its entirety, there is no state court judgment that might have preclusive effect in this case. As a matter of federal law and as a matter of California law, a vacated state criminal conviction cannot preclude a later Section 1983 action as this court held recently in the Mills case. Second, Mr. Vargas' Brady claims were improperly limited at summary judgment when the district court barred a trial on seven of the suppressed assaults that were part of this teardrop rapist pattern, including four that had occurred after Mr. Vargas was arrested. The district court gave no explanation for granting summary judgment on some of these assaults, and on others, it improperly construed the facts against Vargas, holding as a matter of law that the individual defendants could not have known about those assaults. Third, Mr. Vargas' Monell claims against the LAPD disappeared from the case without being adjudicated in any way, even though the district court had concluded those claims survived summary judgment, and even though the parties had submitted agreed jury instructions on multiple Monell theories that were independent of individual liability. Fourth, at the limited trial of the Brady claims against the two individual defendant officers that did occur, the district court excluded all evidence of Mr. Vargas' innocence, hampering his case and allowing the defendants to mount the extraordinarily prejudicial defense that the victims' identifications were reliable, that the evidence that was suppressed was not material, and that Mr. Vargas was in fact guilty, although he had been adjudicated innocent already by the California courts. Fifth, compounding these proof and prejudice problems at trial, the district court excluded all of Mr. Vargas' proper expert testimony, including precisely the expert testimony that this court held in Mellon against Wynn should be permitted in a wrongful conviction case like this one. This court should reverse and remand for further proceedings on all of Mr. Vargas' claims. I'd like to focus first, Your Honors, on the preclusion issue and the elimination of Vargas' I.D. claims. The district court's preclusion decision contradicts Supreme Court and Ninth Circuit precedents. Under federal law and California law, a vacated conviction has no preclusive effect. The Supreme Court holds that preclusion requires a final judgment as a matter of federal law. I thought they were talking about issue preclusion here. Yes, Your Honor, we're talking about issue preclusion or collateral estoppel in this case. Whether claim preclusion or issue preclusion, Allen against McCurry and Meagher in the Supreme Court both talk about the need for a judgment if a state proceeding is going to preclude a later federal action. Let me ask you this. On the identity issues, they were litigated in the state court, is that correct? They were litigated in a motion to exclude the identifications in the state criminal proceedings, correct. It wasn't an evidentiary hearing, but it was litigated. Correct, Your Honor. Then it was denied and then it was appealed, ultimately, and it was affirmed. That particular issue was affirmed. Yes, Your Honor, it was affirmed in the California court. If we're applying California law, why doesn't that satisfy all the elements of issue preclusion? Because as this court said in Mills, a final judgment is required at the time that the federal suit is filed. And before Vargas files his federal suit, a California court sets aside his criminal conviction, vacates it on the ground that the DNA evidence shows that, in fact, these IDs that were used and let in at his criminal trial are factually incorrect. And so there is no judgment in the state court anymore. The California court— I can understand that for Kalani and for race judicata. Well, Your Honor— Or claim preclusion. For issue preclusion to have a fact in a later proceeding, the issue litigated needs to have been essential to some judgment that is currently existing at the time that the second proceeding begins. And no question, the issue was litigated and was affirmed on appeal, but then it was set aside pursuant to California's procedures for vacating criminal judgments. And so the issue that was litigated and became part of that criminal judgment, that adjudication no longer has any preclusive force as a matter of California law because the judgment that it was part of no longer exists. But even—and I think Mills, Your Honor, says that, and it says the California rule and the federal rule are both the same. Both of them prevent or allow re-litigation of an issue after a California court vacates a criminal conviction. But I think before this court even reaches the question, does California law apply, there's an important federal question at stake. And the federal question is this. In Allen v. McCurry, the Supreme Court says that by virtue of the full faith and credit statute, a state court judgment will have preclusive effect in a later Section 1983 action pursuant to the rules of the state. But the Supreme Court does not say that if there is no state court judgment, we can still look back at state proceedings and have those preclude a later federal action. The full faith— Well, but isn't there an answer to the law that talks about issue preclusion? Absolutely, Your Honor. But issue preclusion still requires a judgment, whether claim or issue preclusion. Let me just—I don't want to take all your time on this, but I just have one last point. Does your court fairly consider the policy considerations here? I don't think so at all, Your Honor. So even if there was—even if the law didn't require this court to ignore the state proceedings because of the vacated judgment, even if there was still a judgment in place, preclusion shouldn't apply for three reasons, Your Honor. First, because there was no full and fair opportunity to litigate in state court. Montana v. United States says if there's a reason to doubt the fairness of the state or of the prior proceeding, then preclusion shouldn't apply. Second, there's no identity of issues between the two proceedings. This court said in Weig against Los Angeles that if police officers presented evidence in a criminal case that was different than the evidence known to them at the time of that case, that that proceeding wouldn't have preclusive effect in a later case. And third, and more generally, preclusion is an equitable doctrine that shouldn't be applied when it's unfair. So the proceedings in state court in this case were corrupted because the evidence suppressed was that the teardrop rapist was committing these assaults, including the three of which Vargas was wrongly convicted. And secondly, in addition, the DNA evidence now shows absolutely conclusively that one of the victims' identifications was incorrect. And given those new facts, it would be inappropriate to give preclusive effect to a state court proceeding where those facts were never considered and where the conclusion of the state court, without that information, was unambiguously incorrect. Counsel, you make this argument repeatedly, and this kind of goes to your factual... You make it repeatedly in your brief, and it kind of goes to your factual innocence, the whole thing that they should have allowed, that the district court should have allowed the factual innocence finding to be talked about more. But it seems to me that you're basically saying, well, if we find out later, if we find out later that there is some reason why an identification was wrong, then that obviously shows that the earlier identification was somehow tainted. But those things don't necessarily follow from one another. In fact, in a sense, you would say the earlier identification, you would almost not want that determination tainted by what you found out later because you don't want the hindsight effect. And so it seems to me like you're almost... The fact that you want to have what happened later be taken into account almost undercuts your argument, it seems like. Your Honor, I appreciate the point. So the question, how does this later discovered evidence come into play amongst the many legal and procedural issues in this case, depends on what issue the court is thinking about. So on the issue of preclusion, the evidence discovered later could well be reason not to give preclusive effect to an earlier state court proceeding. On the question of the Brady claims, Your Honor's point is quite correct, that we wouldn't attribute to an individual defendant, for example, the knowledge of something that came to exist years and years later. So on that point, that is important to sort of carve out. Let's start with the first one then. You're saying, well, the fact that we now have discovered through DNA evidence that at least one of the identifications was incorrect somehow shows that the early... DNA evidence concluded, the California courts concluded that they were not unduly suggestive or whatever, or that they were not improper. So how does somehow finding out that, well, even though they weren't unduly suggestive and that they were wrong, they were apparently wrong, at least one of them was, how does that somehow show that they were unduly suggestive? Let me ask you this. Do you agree that you could have an identification that was not improper, not unduly suggestive, but turned out to be wrong? We just find out later that it's wrong. Absolutely, Your Honor. And so in this case, on the question of preclusion, the fact that the identifications are wrong means that preclusion shouldn't apply. And let me try to explain it from this perspective. The constitutional question, was the identification procedure a violation of due process, has two elements. One, was it unduly suggestive? And I believe we have new evidence on that point here, but put that to the side for one second. Two, was the resulting identification corrupted? Was it incorrect so that use of it at the criminal trial violated due process? Corrupted and incorrect are kind of two different things. Corrupted means that there was something wrong with the process. But incorrect doesn't necessarily mean it was corrupted. It just means that all these things are sort of probabilistic endeavors. So it could be you have nothing wrong with it, it could not be corrupted, and it could just actually, turns out we find out later, was incorrect, right? Right. But an identification known to be incorrect can't be used in a criminal case consistent with due process. That's the second element of an unduly suggestive identification claim. So Your Honor is absolutely correct that there's these questions about... Just the fact that you find out later, I thought you already acknowledged that the fact that you find out later that it was incorrect doesn't necessarily mean that it was unduly suggestive. Well, correct. The fact that it's found out later to be incorrect does not mean that the procedures used were unduly suggestive. But the fact that it is later found out to be correct means that it can't be used in the criminal case consistent with due process. So take the preclusion question from the position of when Vargas' conviction was vacated, and if he had been remanded, he would have been able to re-litigate that issue in state court and say, of course, this identification can't come in at my new proceeding. For the same reasons, preclusion shouldn't apply here. But I think there are other new facts known today about coaching, as Vargas says in his complaint, that along with the things that were known back at the time of the initial identification procedure, let him plausibly state a claim for relief. And remember that this issue of his identification claims is being reviewed on the pleadings.  after the defense had answered the complaint. It was decided based on the complaint and judicial notice of documents from the state proceedings. The question is, has he pleaded a constitutional claim in his complaint? And I think the answer to that is quite clearly yes. And so the only question for this court on the identification claim is there some quality of this earlier state court proceeding that allows it to preclude these Section 1983 claims. And Supreme Court and Ninth Circuit case law make it quite clear that it's not precluded. And even if the law were different, there are equitable reasons not to apply preclusion. Now, I'd like to focus for a minute on the Brady claims that were limited at summary judgment in this case. The district court decided that seven of the 18 serial assaults that were part of the serial rape pattern at issue in the case could not come in at trial. It said only 11 of them presented a trialable issue of fact in the case. It gave no explanation at all for granting summary judgment on four of the seven that were excluded. And this court has said that that alone requires reversal. And for the other three, the district court decided as a matter of law... I don't want to use up our time, but on this issue, the thing I'm struggling with is when I read, I see the footnote you're talking about with regard to the three, I see that the four are never mentioned. But the problem is that the order just says, I'm reading the last page, ER 28, the motion for summary judgment is denied. And so I tried to find an instance where... I couldn't find an instance where a summary judgment motion is denied, but then, like, a court found that sort of implicitly it had granted summary judgment on certain issues. I understand that the document is not as clear as I'd like to have in the middle of it, but at the very end of it, it just denies summary judgment, period. A summary judgment decision, because it's interlocutory, requires us to actually look at the content of the decision. The court says quite clearly at 20 and 21 of the record that only 11 of the assaults that Vargas has proffered present a triable issue of fact. When a district court says that to a litigant in a summary judgment order and they show up at trial and they say, I'm going to put in all the evidence I want of any old assault because the end of your order said denied, the district court would rightly say, you know, you're out of your mind. You can't put that evidence in. Was there a pre-trial order, pre-trial conference order here? There was a pre-trial order proposed to the district court that was never entered. So I suppose the last operative document at the time we go to trial in this case is not the pre-trial order, but is that interlocutory decision at summary judgment with respect to the individual claims and the decision denying summary judgment across the board on the Monell theories. So... Counsel, did you include reports of three of the seven allegedly excluded assaults on your trial exhibit list? So on the proposed trial exhibit list that was never entered, three of the seven assaults, reports from those were included. But a party including a piece of evidence on a proposed exhibit list has absolutely no bearing on what the district court summary judgment order is. And the one that was used... You might tell us something about what you thought it was, I guess. I mean, it's some evidence that you didn't interpret it then as you're interpreting it now. I respectfully disagree with that, Your Honor. First of all, only three of the seven assaults at issue were included in that pre-trial order. And second of all, to some extent, parties include lots of exhibits on an exhibit list to be used for other purposes. So, for example, the one that was actually shown to Detective Smith at the trial that the defendants point to was shown to him apparently to refresh his recollection on some issue independent of the assault depicted in that particular police report. But still, I don't think a party by putting something on its pre-trial order could affect the quality of a district court's order at summary judgment no matter what that party wished. And I don't think that our position here is any different than our position in the district court. In the district court, we said, there are 18 instances of past assaults investigated prior to the time that Vargas' conviction became final on direct appeal in his criminal case that should come in as evidence that these individual defendants and the LAPD knew of the assaults, knew they were committed by a serial rapist, and nonetheless suppressed them from Mr. Vargas. And the district court's orders viewed that evidence and said, certainly with respect to the three Rampart cases, those aren't coming in at trial because I'm holding as a matter of law that the defendants did not know about those. And that decision at summary judgment improperly excluded evidence that would have been important to the trial against the individual defendants and certainly could have been brought into a trial on the Monell claims which were abandoned without any adjudication whatsoever. I'd like to reserve some of my time for rebuttal. I'll give you some extra time. Thank you, Your Honors. Can I ask a question about the Monell issue? I sort of got the impression when I read your brief that after the jury announced its verdict, Judge Wilson just got up and walked out, which is not precisely what happened. And, in effect, first he asked you if you wanted the jury polled, and you agreed.  And it seemed to me quite clear, if I was sitting there in your shoes, that that was a signal that he was going to terminate the trial. You didn't object, even after he said the jury will be excused. Nor did you say, Judge, can we approach before the jury leaves? And this, what you're complaining about, seems to me, is a kind of a curable, it was something that could have been cured had you done that. And the other thing that sort of struck me is that, and it's in Judge Wilson's order, is that when he bifurcated, trifurcated the trial, and this is an exact quote that's in the docket sheet, he says the court agreed to break the trial into, quote, three stages. The liability of the individual defendants under break. Two, Monell liability of the City of Los Angeles and the Los Angeles Police Department, if necessary. As I understand your position, it was always necessary. I don't know what the contingency, as I see it, I mean, if they found against the individual defendants, then there would be trial on Monell liability. And your view is that even if they found, that they found in favor of the individual defendants, and there still has to be a trial. So I'm troubled by the fact that we're dealing with here, Monell is a curable error that you just let go. Now, whether you call it consent, waiver, or procedural forfeiture, I'd like you to address that issue. And I have a follow-up question related to that, which is on that issue, if you lost on everything else, and that was the last issue, what kind of new trial do you want? Do you want the whole thing retried, or just the issue of Monell? Thank you, Your Honor. So I agree with everything Your Honor said about the discharge of the jury. Our response to that is... He also, by the way, thanked, thought that you did a great job, and he thanked you. I mean, I had this vision when I read your brief that Judge Wilson just got up and ran out the door. Fair enough, Your Honor. And I apologize to the extent that misrepresented what happened. I agree with what the court is saying about the colloquy that ended the individual trial. But it was the end of the individual trial, and the objections that had to be mounted by the plaintiff at that point in time were objections that pertained to any problem with that verdict. The trial had already been bifurcated into stages,  that the second phase of the trial was never going to happen. He said goodbye to the jury. Did you think when he said to the jury that the jury would be discharged, that he was going to have a second trial? I think it was quite clear that he, and consistent with what he said when he trifurcated the trial, that he thought that the trial was over. And it seems to me that this was curable if you had gotten up and said, Judge, before you judge, either we object, or if you didn't want to say we object in front of the jury, Judge, could we come up before the jury is discharged or before the jury leaves to the sidebar and call to his attention what your argument was that it was essentially a curable defect or potential error. I take the point, Your Honor. I think the issue, our position is, first of all, that that Monel trial could have happened in front of a separate jury because it's a separate issue. But more importantly... So if we just, hypothetically, if you just went on that issue, it would be a separate Monel trial. You wouldn't go over the first trial. To answer your question, only one on the issue that the Monel claim was never adjudicated. Yes, the only trial that would happen on remand would be against the Los Angeles Police Department, absolutely. But I think that the failure to object there can't overcome the major procedural error. Objections at the end of the trial are supposed to be to the verdict just returned, not to all issues in the case. There was a bifurcated proceeding. The trial simply never took place. The claims had been ready for trial, summary judgment having been denied, the parties having proposed jury instructions, and then it was just never adjudicated. And so even if there is some forfeiture of the point there, as Your Honor says, there's an error here that can't be fixed in a Rule 59 ruling after trial. All I'm suggesting is, look, I've presided over these trials for years. Now, I make it a practice, but I'm not saying that you should have. I never, at the end of every trial, whether it's guilty, not guilty for the defendant, plaintiff, I say, is there any reason the jury should not be discharged? And they're not limited, as I understand it, if the answer is yes, and I don't think I've ever had a yes answer. But if the answer is yes, their ability to say, there is a reason, can I come up, is not as limited to the grounds that you've just suggested. You could have come up and said, judge, we have to have the second trial on the issue of Monell because the verdict in favor of these two police officers is not the end of the discussion. In fact, you recognize that. And that, he might have agreed with you. He might have disagreed with you. But I don't quite understand why you should be able to come up and argue for a reversal based on an error that you could have avoided and that was curable. You can't tell me that if you had gone up there and said, judge, there's another issue, please don't let the jury go, or if you're going to let them go, let us brief it, but let the jury know that they may have to come back. I don't believe that your ability to come up and speak to the judge or make a point to the judge is limited in the way you suggested. Your Honor, I don't think that the objection had to be made then because the proceeding was already bifurcated and could have been tried in front of a different jury. It was bifurcated. He said it's necessary. But you're saying his original order was wrong because it was never. He said there would be a Monell. The second part would be Monell. If it was necessary, which leads me to believe that he was operating on the assumption that it would be necessary if there was a verdict in favor of the plaintiff against the two officers. You're saying it was going to be always necessary. Go ahead. I'm sorry, Your Honor. Not if there was a verdict for the plaintiff, for example, which happens in some cases where the plaintiff proves a Brady violation and then there's nothing to proceed against the city about because there's no possibility of recovering additional compensatory damages. But still, the district court never made clear that the trial of Monell was contingent on the individual trial. And there isn't a legal basis for that conclusion under this court's case law. This court's case law says that a Monell claim can be tried as long as it's not inconsistent with a verdict about the individual defendants. In this case, not only didn't all of the different instances of assault go to trial at all against the individual defendants. There's a pattern of suppression here that the LAPD could be found responsible for that has nothing to do with these individual defendants. But the individual defense verdict says nothing about whether the evidence at issue in that trial was suppressed. The defense at that trial was we didn't know about this evidence. But then, I hate to get into this, but you're basically saying you can't point to a single person who would be guilty of suppressing the evidence but somehow it's in the air. I mean, certainly, it was hard for me to tell from the portion of the transcript that my law clerks printed out of Contreras' testimony who he actually was called by. Was he called by you or the prosecution? I believe he was called by the defendants, Your Honor. But I'm not sure about that. But he seemed to me to have done his job. And the only reason these two defendants didn't get the information that went out in flyers and were talked about at the major crimes table was because of the peculiar circumstance that they were not there for whatever reason. They were reassigned or vacationed, whatever it was. And the jury accepted that, presumably accepted that. But I'm just trying to think. You're making a Monod claim and you're saying no particular person in the Los Angeles Police Department is guilty of violating Brady. Correct, Your Honor. That's precisely the point, is that there can be municipal liability in the absence of the mens rea that's required in the Ninth Circuit to prove a Brady claim or also because of collective inaction. That's firmly established in the Ninth Circuit. And that's what you should have said to Judge Wilson before you acquiesced, in my view, to allowing the jury to leave and essentially be discharged. That's what you should have said. Judge, can we approach the bench or alternatively reject because and told them exactly that. Okay. Maybe we should hear from the city. Thank you, Your Honor. And I'll give you a minute for rebuttal. Let's hear from the city. Thank you, Your Honors. Michael Walsh for the City Attorney's Office for the City of Los Angeles. May it please the Court. I guess starting just since we were just talking about Winnell rather than taking it in chronological order, I'll go in reverse. I think Judge Corman is exactly right. And we make the argument in the brief that, of course, there was an opportunity to object to the jury being discharged. There's nothing in the record to suggest that two juries was ever contemplated, that there was a separate void there being set up between the phases. That was never part of the discussion. I mean, what would the objection have done? I mean, ultimately, when they actually in their motion for a new trial or whatever it was, when they actually argued it to the judge, the judge didn't say, well, you should have brought it up earlier. What he said was Heller. He applied Heller. So I think they would have, you know, he probably would have, I think we have to assume he would have reached the conclusion that he reached anyway, which is that you can't, because there's no individual liability, you can't have Monell. That may well be your honor. And I think he would have been correct in saying so. And I think actually the new trial motion does any procedural irregularity in not expressly addressing Monell at the end of phase one, I think is resolved by the ruling on the new trial motion. I think it's quite clear that would have been the ruling on a JMOL or a revised MSJ. The court recalled that the motion for summary judgment by the city on the Monell claim was raised and ruled on just on the eve of trial. So the court had all the best evidence from plaintiff supporting their Monell claims because the motion for summary, the partial summary judgment was to eliminate the entire Monell claim. So clearly plaintiff put whatever his best evidence was on to support continuing with the Monell claim and to defeat the motion. That was on the eve of trial. What do you, what was your understanding of the plaintiff's Monell theory? Well, from their own papers. So they had, it was a failure to train issue. They alleged a failure to supervise, although they never offered any evidence to support such a claim. They simply keep asserting it and citing the cases saying that such a claim is theoretically possible, but they never supported in evidence, even in opposition to the MSJ. They make a policy maker argument that if a policy maker in the city makes a decision that affects the disclosure or the policy disclosure, but then the only policy maker they identify are the two individual investigating officers. Their argument is that they're the policy makers. But at the end of phase one, the jury exonerated them and said they didn't commit a constitutional violation. So that claim goes away. So based on their own papers, those are the theories they offer and all those theories are, are, are. Let me ask you this. Did judge, did judge Wilson ever reject any of those theories in, in some sort of ruling? He, well, he, he, when he denied the motion for summary judgment, he said that the only theory that survived was the failure to train that, that, that otherwise the motion would have been granted. The only theory to survive was the failure to train. And actually I, I, I, I slightly messed up. So, so the other theory they, they made on Monell was that there was no, and this goes into the training actually, so I just didn't elaborate was they claim there was no Brady training prior to this incident. And the facts on that aren't even disputed there. There is express and longstanding training that all exculpatory evidence had to be disclosed. That would just, that's the evidence that's in the testimony. That's just the state of the evidence, but they didn't call it Brady training because there's a state law that requires even more disclosure than Brady requires. So plaintiff is hanging on this magic word. They didn't say the word Brady, but they did instruct and train that all exculpatory evidence needed to be disclosed. I'm not sure why the word Brady would be magic. Did he have some obligation at the end of the trial to, to say, Hey, judge, you gotta, you gotta resolve the Monell claim. I think, yes, he had an obligation as soon as it was clear that the judge Wilson, because this follows from the MSJ motion, the ruling on the MSJ motion was the only theory left was failure to train. And that claim clearly relies on there being a constitutional violation by the officers involved. Because if they did, if they properly disclosed, which is what the jury found, they did, they did hand over the other cases they knew about. There's no constitutional violation. There's no failure to train claim under Monell. The city attorney there in the trial at the end, he didn't say he or she, I don't know who it was, but they didn't say, Hey, judge, we gotta, we gotta resolve this. Somehow we got to resolve the Monell claim. That's true. Although, since it's plaintiff's claim, I think it's plaintiff's obligation to make that objection, but, but you're right. No one, no one, no one raised the objection. Right. Why is it plaintiffs? If I'm plaintiffs and the judge gets done and the judge has already trifurcated the proceedings, I probably don't want this jury for my Monell failure to train. Right. So I'd be happy with the judge to dismiss this jury. And then we'll take up the Monell claim with a new jury. Well, that may be. So there's nothing in the record to suggest that was ever contemplated, ever discussed, or was ever part of the plan of this trial. So I think that's entirely an after the fact argument that plaintiff is making, but that had nothing to do with the proceedings as they were. I'm rejecting it based on Heller because if you don't have individual liability, you can't have, you can't have Monell liability. How is that right? Under fairly and for a failure to train theory, where it seems to me that you could have, nobody's actually, no individual officer has actually done something wrong, but because the, the government hasn't actually trained the folks that this is like, for instance, in this case, the information isn't actually getting spread around to the right people. And so therefore somebody spends a very long time in jail because the information didn't get spread around to the right people. Not because anybody did anything wrong, but just because there was no procedures in place to make sure that happened. Well, first of all, I think the evidence shows that there were procedures to spread the information around. That's not judge Wilson's ruling. Judge Wilson's ruling is you never can do it. He cites Heller. He says you can't do it. Right. But I think on the, on the training issue, which, which is all, and judge Wilson's made it clear, the training theory is the only theory that survived the MSJ motion. So that's the only theory he's really addressing in the new trial motion. On the training issue, there has to be a violation by the officers who are, in that sense, it falls into line with excessive force cases of a poorly trained officer exercises excessive force on a, on a, on a suspect. The officer does the, the, the existence of a constitutional violation doesn't rely on the good faith of the officer executing the, the, the, the unconstitutional act. There's still a constitutional violation. If there were Brady materials that weren't disclosed. Counsel. Yes. It seems to me here that the better to train theory would be that if you're that the right hand isn't talking to the left hand, the right hand didn't do anything wrong. The left hand didn't do anything wrong, but because there's not procedures in place to make sure that the right hand is talking to the left hand, that notwithstanding that the jury presumably found that these folks that didn't, didn't withhold anything, didn't do anything wrong, they didn't have all of the information that doesn't seem to me what's been decided so far. That doesn't seem to me that that would necessarily preclude you from being able to make the claim that you should have procedures in place. The municipality should have procedures in place to make sure that the right hand was talking to the left. Okay. And maybe this is my own fault for not addressing the arguments in a different order, because I think the jury did. The jury concluded that this information was all disclosed. That's a necessary part of their conclusion. There was no constitutional violation. And this goes back to the MSJ on the Brady issue. The court found that there was a question of factors to 11 of the, of the other cases, but the rest of the ruling, the four that weren't addressed, the order can't possibly address the, whether those are admissible or not because an order can't be preclusive on an issue it never addressed, but it's not even a lot of the case on the rampart issues, but that's just black letter law on the ninth circuit. A denial of a summary judgment motion just isn't law of the case. If there was any doubt about that in this case, they brought out a rule 58 motion asking to make it law of the case. And this judge Wilson has had a multiple occasions. That's not what I was doing here. That ruling is not law of the case here. So there was no dispute that all. I don't think council, I don't see how it has to be law of the case to, for their position to be that we should have been able to put this in front of a jury and, and, and, or maybe, maybe judge Wilson could conclude that this, that it's appropriate to resolve the Monell claim and summary judgment. But I don't think it's proper for him to conclude it the way he did, which is that Heller means that you can, if you don't have individual liability, you can't have municipal liability. That just doesn't necessarily apply to a failure to train theory for the reasons that I just said. Well, I think, I think the gap and maybe, and maybe there's some of their abstract case where that's possible there. There has to be a constitutional violation. Once the jury found that all the materials had been, I mean, plaintiff could have brought up all 18 of the, of the other criminal charges. There was nothing precluding them from doing that. Even plaintiff admits they could bring up the 11. They only argued for, so they had all these, this wealth of cases out there. They could have brought more to bear. They chose not to that's their strategy, but they can't complain about that now. But, and the primary issue was, were these things disclosed? Was, was the serial rapist book provided since the prosecutor wasn't provided? One of the issues was, was it disclosed with the other issue was the defense was we disclosed everything we knew and we didn't know about some of this stuff. The second part's the key. We didn't know about some of this stuff. That's, was the officers. And so the jury presumably thought, well, they disclosed everything they knew and they, and they didn't know about some of it. But if, but a jury could also conclude they should have known about some of it. It wasn't their fault. They didn't know about it, but it could be the municipality's fault. They didn't know about it. Hmm. I see what you're saying. I think the, well, and of course there's a lot of issues interweaving here. So I think my previous point is there has to be a constitutional violation of failure to disclose. I think the jury found, well, I think the jury found that there was no failure to disclose, but going more to, to on the other issue. Um, well, I think on a failure to trade, you know, I think your, your issue goes more to a failure to supervise or this new theory. They've, they've, they've disclosed on appeal that Clark was going to address the internal communication mechanisms of the LAPD, which doesn't appear anywhere below, but does appear in the appellate opening for you. Um, none of these were, were, were before the trial court. None of these were issues that were raised or theories that were brought on the failure to train. You have to have a miss. You have to have a, an error by the, the officers that you claim were poorly trained. That had to be something they did wrong because of the lack of training that that's, that's, that's how the lack of training cases go there. I don't, uh, that certainly plans on sites where I like a failure to train case that separates from the actions of the officers that somehow the city is independently liable. You have this sort of abstract claim, but it has to be tied to the actions of the officers. But even setting that aside, even, even giving them every benefit of the doubt on that, we still end up with, with a basic causation issue. They had 18 prior, uh, or at least 11. You can even take in plaintiff's theory, 18, uh, relatively similar, or at least roughly similar MO cases that they could all raise to the jury. And the jury found that those weren't causation, that, that the disclosure of those cases, uh, that that didn't, that didn't change the outcome of the case. There's no reason to believe that two or three more would have. So even if you give plaintiff benefit of the doubt on all the other claims, you still end up with a basic causation problem. There were already numerous other claims brought to be considered, be considered. I counsel, you keep saying that, but I don't, I'm not sure that the jury in this case, in order to exonerate the, um, the individual defendants had to conclude that all 18 were disclosed because their argument was, we disclosed what we knew, but we didn't know about some of these. No, no, no, but, but even accepting that and giving blunt benefit, every benefit of doubt, even plaintiff concedes they could argue 11 of these cases were disclosed. Well, plaintiff was arguing that they weren't, that there were 11 other cases that they didn't know about. And those weren't enough to change the, the, the minds of the jury that these 11 other cases that were the roughly similar M.O. that didn't change the outcome. So what, so what would two or three more do? Counsel, I'm not saying they would win a trial. I mean, you know, maybe they wouldn't be able to win a trial. I mean, I think they would have, but the whole, but going back to the actual issue before us, it's, it's a question of whether or not judge Wilson was correct in concluding that because of Heller and applying Heller, right. And saying that you can't, that there's, that the failure to train theory was foreclosed because once you don't have individual liability and you're making that argument, I just don't think that that, I don't think it's a logical matter that necessarily follows. And I think you also have a problem with the fairly versus Lumen case from our circuit. Well, in the abstract, clearly there can be a, I mean, there's, there's certainly cases where there aren't, there is not individual officer liability, but there can still be city liability. That's clear. Even Heller says that. So, so the abstract, we're not, we're not arguing over whether that's possible under a, under a particular case. The question is whether that's the case here. And in here that there, there was no separation. And we know that from plaintiff's own arguments, but the arguments they make, they never separate those theories out. Plaintiff's own proposed jury instructions for phase two. Question one is, did the two investigating officers committed constitutional violation? If the answer is no sign at the bottom, we're done here. That was plaintiff's proposed jury instruction. So everyone agreed. There was no separation on the failure to train in this case. That was simply what was before the court. Just a little bit on the Brady, on the, uh, on judge Wilson's Brady order, summary judgment ruling. And the footnote was judge Wilson. Correct. In concluding that the post arrest events or incidents were not Brady. Was I recalling Brady material? I'm sorry. Are you talking about with regards to whether it was something the officers knew to disclose or whether, or whether they knew it or not, whether it would be the post arrest. Yes, that's right. That's a footnote. I mean, his footnote. He says they weren't Brady. He says it wasn't Brady. That's right. I think his theory was that once the officers have performed the arrest that their investigation is done. And I think that as a practical matter, that's not correct for Brady purposes, is it? Well, for the prosecutor, it's not because the prosecutor is still involved in the case, but you have, you have to take someone's Brady's obligation with regard to their participation in the case. Once the arrest is made and the case is handed over to the prosecutor, the police no longer have a role in that case. Their, their job is done except maybe to show up as witnesses. So their obligation to find new evidence, new investigation, all that, their, their participation in that is done. Now the prosecutor still has an ongoing obligation. That, that, that I wouldn't disagree with because the prosecutor is still involved and there's not a conviction yet, but the prosecutor is not a party here. The prosecutor wasn't sued in this case. So if they have some, some complaint about what the prosecutor disclosed after arrest, that's beyond the scope of this lawsuit. The question is what the obligation of the police officers are. And that obligation has to be defined by the limits of their participation in this case. And that pretty much ends with their arrest and handing them over to the prosecutor. So, so I take your judge, the judge's point I think is that there's a Brady obligation writ large that extends beyond the arrest. The question is who has it at that point? The prosecutor clearly has it. I don't think there's anything saying the police have to somehow stay involved in a case that they're otherwise finished with. Right. Can we switch over for a minute to the, to the identification issue? Absolutely. So I think, and as, as we say in the briefs, I mean, uh, Barks is characterization of the case law and, and the existing law in this case is just wrong. Uh, it's just wrong. So if you look at the, at the controlling statutes, uh, which is, uh, 28, uh, us 1738 talking about the full faith and credit of state claims, the word judgment doesn't appear in that statute. It says that the preclusive effect of state judicial proceedings is exactly the same in federal court as it would be in state court. And that might include final judgments, but it might not in collateral stop. Well, it's going to include ancillary rulings, but the word, the final, the concept of final judgment doesn't appear in the controlling statute and all the cases ultimately side to that. Now the case is the plaintiff sites that do use the term collateral stop. All don't have separate rulings from the judgment. So whatever factual issue is being raised in those cases, that's actual issue was determined by the judgment. There was no previous suppression motion or, or whatever previous or ancillary ruling separate from the final judgment. And obviously if the final judgment is reversed, whatever effect the judgment has, whatever is wrapped into that final judgment obviously doesn't have recursive effect anymore. We cite several cases in our brief of state law cases where there's a collateral stopper issue and the judgment was later vacated or dismissed or a new trial was ruled or was granted, but the collateral stopper effect of the ancillary of the separate ruling was maintained because of the California state law, the status of the final judgment doesn't change the preclusive effect. You know, let's just assume here that the, that the criteria for applying collateral stop or claim preclusion or issue preclusion applies. Why don't the equitable conservative considerations sort of take this down and claim preclusion? Oh, because, because, because they don't, they don't apply to the circumstances of this. Essentially plaintiff has argued is because it turned out that a traumatized witness who was doing her best to identify her attacker was wrong, that that somehow creates liability for the city, that that somehow opens up this other issue, which has nothing to do with the fact that she was simply wrong. There's no equitable basis for that. There's, there's, there's no, there's no equitable grounds. It's the opportunity to litigate that claim in federal court in a 1983 case, but it was already litigated, but that's the whole point of the full faith and credit clause. There's no equitable consideration to open up. I mean, if, for example, there had been a habeas corpus writ granted questioning the validity of the identification process, that would change it. You would agree with me that the California law does recognize an equitable exception to collateral stop. Right. But there has to be some braces to challenge the original identification. And there's, there's, there's nothing challenging. There's nothing questioning the original identification process here. The outcome was incorrect and that's unfortunate, but plaintiff operates under the theory. And I think judge van Dyck even mentioned this, that because of DNA tests later found that he didn't commit one of the three sexual assaults, that that somehow means the police framed him. There's no equitable connection there. There's no logical link. Well, they, they claim there's more to the identification issue. They didn't have discovery here. The district court decided on the, on the papers, basically. It was a motion for judgment on the pleadings, if I'm not mistaken. No, that is correct. But I don't think there's an allegation of evidence that wasn't available at the time. It was the district court. It was the district court that raised the issue. Right. No, that, that, that is correct. No, I don't think, and I'd have to go back and check. I don't think the complaint even alleges that there was new evidence that wasn't available and wasn't, that couldn't have been raised at the time. The motion of the suppress and the new trial motion and the appeal on the motion to suppress were all ruled on. The fact that they've thought of a new theory and thought of a new legal argument doesn't change the validity of the original argument. What's the significance of the state court finding him factually innocent? In terms of this lawsuit? Yeah. I don't think there is one. Well, maybe if it got to damages, it might be. But otherwise, there's, I don't think there's any impact on the issues before the court. How does that play in the equitable considerations for collateral establishment? I don't think it does. Why not? Because, well, because, well, again, that goes back to the point I made before. He was wrongfully convicted and spent 16 years in state prison. That, well, that's correct, but that doesn't, that doesn't even suggest that the police did anything wrong. You have police doing their best and there was already a suppression motion and all that was adjudicated. But they did the best with identification and they followed a proper procedure. We have traumatized witnesses who are doing their best to make an identification and they did so. And then a jury takes all of that and they do their best job to come up with a conclusion as to whether there's reasonable doubt. And the sad fact of the matter is that even if everyone does their job, sometimes it's going to be an incorrect result. But the fact of that incorrect result doesn't unwrap everything that was done before automatically without something else. Well, I think you're probably correct that California law, just because the state court granted a writ of habeas corpus doesn't necessarily mean that all the prior rulings are vacated. That's right. I mean, had there been a habeas corpus that questioned the validity of the identification and sort of opened that up for some specific reason, that would be one thing. That's not what happened here. It just so happens that a scientific test that didn't even exist at the time of the initial trial was able to show that he didn't commit one of the three crimes. As it was, they were bundled together so the other two end up getting locked into the one that he was exonerated with. Are you familiar with the California Court of Appeals recent decision in FEV1? Or FEV? Yeah, I think it's FEV1. Not offhand by name, Your Honor. Could you remind me? It's one of the equitable consideration cases. It's a case where a Ninth Circuit panel had affirmed the district court summary judgment in an obsessive force case, but a non-bond panel reversed, took a different approach. But in the state court, the state court had followed the district court, the original panel's summary judgment, affirming the summary judgment ruling and kicked out of the case. And then after the non-bond panel handed down its decision reinstating the claim, they refiled again in state court and the city, I think it was an L.A. case. I can't remember if it was an L.A. city or some other city, but raised collateral, raised judicata. And the state court of appeals said, uh-uh, we have to look at the equitable considerations here. And the Ninth Circuit, in their on-bond opinion, essentially reinstated the case. And the California Court of Appeals said, no, these equitable considerations require the case for there to be a relitigation of the state law-related claims, wrongful arrest, false arrest, and whatnot. The tort claims, the state court claims. No, I think the analogy here with regard to any equitable considerations would be if we were to make some sort of argument that the prior judgment precluded the 1983 action outright, that there was a finding of guilt, the jury did its best, the court did its best, the jury did its best, and none of this should be able to be reopened. Obviously, such an argument would fail. Because he was found to be innocent, and so the conviction can't stand. And that's just a matter of law. So the conviction gets broken open. But I don't see where there's any, where somehow because, despite doing their best job and adjudication that the police did their best job and they didn't act in an unconstitutional fashion, the witnesses did their best job, the jury did their best job, no evidence to the contrary, that a later finding of innocence based on a test that didn't exist somehow creates liability for the officers who were already found to have done nothing wrong. I don't see how that's an equitable conclusion at all. Well, you know, they didn't even have a chance to do any discovery. Well, because on a... The district court just raised the issue and then said, no, we're not going to, the policies behind collateral estoppel, judicial efficiency and whatnot, you know, we're not going to, we're not going to relitigate this case. We're not going to relitigate this claim again. That is the point of preclusive. Yeah. But there are other considerations as well. I mean, the equitable considerations are very generous or can be very generous in particular cases. Well, I suppose at the end of the day, the equitable considerations can be whatever the court decides they should be, but they should be rooted in something that's balanced between the different parties. I mean, yes. So we have a plaintiff who was found to be innocent of one of three, factually innocent of one of three sexual assaults. He has a 1983 claim and he has issues he's raised as a result. But the prosecution tied all of those claims together and when the habeas proceeding, they recognized that. They just said, you know, they're all linked together. We can't defend the others. Well, that's unfortunate. That's right. And because of the passage of time, it was no longer practical to re-prosecute the other two and that's just the practical result. That's correct. Isn't that, by the way, an equitable consideration? The number of years that have passed since the convictions were final and were affirmed through the California courts and now, what is it, a decade? Even longer? Later, the city is now forced to try and defend itself with evidence that may be difficult to find or may be stale. I think that's an equitable consideration as well. I didn't articulate it as well, but that was the point I was trying to make about reopening and creating liability on officers who were already found who committed no constitutional violation and now they have to reach back into the notes and records and memories 20 years ago to defend themselves on an issue that was already adjudicated. That's also one of the points of collateral estoppel is to let old claims that have been resolved stay resolved. In fact, if I recall, by the time they went back to the books that they made, because of the passage of time, the books weren't in any great shape. But I want to ask you one more question relating to the lack of discovery on the eyewitness identification. In my experience, there's nothing to prevent a defendant from going in to all of the circumstances that resulted in the eyewitness identification being made so that he could argue to the jury they shouldn't rely on it. That's correct, Your Honor. That's the bread and butter of every suppression motion. And they can conduct discovery. I mean, the argument is that Judge Wilson decided without discovery. But let's assume they had no discovery. But ultimately, they get the material. They get the prior statements. They can go in and they can question the witnesses about the circumstances of the eyewitness identification. They can question the officers about the circumstances of the eyewitness identification. They could explore every issue relating to it so that they could argue to the jury, even where the judge has made a ruling, forget about that. You should take that into account in how much you want to credit the eyewitness identification. And I assume that that happened here. Am I wrong? Just to be clear, you're talking about in the criminal case with the original suppression motion? Yes. Forget about the suppression motion. In the case itself. In other words, whatever a judge rules, when I find a confession is voluntary, for example, just to go out of this, there's nothing to prevent a defendant from arguing to the jury. They could find that it was coerced. And because it was coerced, they shouldn't credit it. Or even less, though, that it's just unreliable. Exactly. The same thing, it seems to me, is true with respect to a judge's pretrial ruling on the eyewitness identification. There's nothing to prevent the defendant from going through every aspect of the identification procedure for the purpose of arguing to the jury that they shouldn't believe it. That's absolutely right, Your Honor, and that is what happened in this case. I wasn't counting that as a separate adjudication, but you're right. There was the suppression motion, there was the cross-examination and the challenging trial, which the jury rejected, and the new trial motion and an appeal, and they all upheld the identifications. Okay. Let's see. We let you go. You took your weight off. I'm over time, so unless there's any questions... Okay. Thank you, Counsel. I'll give the other side. I'll give... Come on up. You can have two minutes for rebuttal, and that's it. Thank you, Your Honor. Just briefly, on the ID point, the defendants haven't responded to Mills at all. This Court's decision in Mills says that all factual determinations in a criminal case leading to a judgment have no preclusive effect once that judgment's overturned. The argument about 1738, the Supreme Court has... It was overturned on direct appeal, Your Honor, but I think... Well, that seems to me that there may be a difference. But the logic of that decision, as explained in Mills, would apply equally to this case. But even so, the equitable considerations here, DNA evidence shows that one of the identifications was wrong. He has been adjudicated innocent by the California courts on all three of the assaults, and so the idea that preclusion should apply in this circumstance really doesn't have merit as a matter of equity. But all of the concerns about can these defendant officers defend themselves at this trial, they can, of course, defend themselves on the merits. The question before this Court is whether preclusion is the defense that stops a 1983 claim, and as a matter of federal and California law, there can be no preclusion in this circumstance. I want to talk... But you want to have a... You want to retry the whole case. Forget about the issue that I spoke about, if it was just Ponell. But you want to retry the whole case, if I understand you correctly. Our appeal addresses all the issues, but on the identification... In other words, you want another jury to decide whether or not these two defendants, in the original civil case, were in fact... did in fact violate Brady. Well, conducted on newly suggested identification procedures, that claim never got passed the complaint. And on the Brady claim, yes. The officers, contrary to what counsel suggested, have an obligation under Kyle's against Whiteley to disclose evidence, and they were working on this case throughout. On the Ponell point... So the answer to the question is you want to retry these defendants, individual defendants, again. How many years later? Your Honor, it is 23 years later. 23 years later, you want to retry in a civil case these defendants. That's what... That's what happens... Yes, Your Honor. That's correct. That's what happens... That required a yes or no answer. And I'd like you to address the other question that I raised. You could have, during the course of this, in terms of the eyewitness identification, you could have gone into all of the circumstances, and I assume you did, in cross-examining the witnesses, the eyewitness identification, and the police, about what alleged suggestivity was present for the circumstances so that you could argue to the jury, don't correct it. In other words, you know, you were able to find out during the course of the trial exactly what happened here without discovery. You know, I tell people in civil cases, you know, there's very little discovery in criminal cases, and I find defense lawyers do a great job in managing to defend their clients. So you didn't need discovery in the sense that you were able to get everything you wanted to argue about the eyewitness identification so that you could argue to the jury, don't correct their testimony. Okay, you got to answer this, and that's it. Yes, Your Honor, in the criminal proceedings, that discovery was available, but the question before this court is whether the ability to take that discovery in a state criminal case categorically forecloses wrongful conviction claims under Section 1983. We would submit it does not, and we'd ask this court to reverse and remand. Thank you. Okay, thank you. Thank you, counsel, for your arguments this morning. It was an interesting case. Appreciate all the time you've devoted to the case and to the arguments. Thank you, Your Honor. The matter is submitted at this time. Thank you. Thank you, Your Honors. This court for this session stands adjourned.
judges: Paez, Korman, Vandyke